UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

MINA KARAMI,

        Plaintiff,

        v.

JOSEPH B. EDLOW, *in his official capacity as Director of U.S. Citizenship and Immigration Services*;
MARKWAYNE MULLIN, *in his official capacity as Secretary of U.S. Department of Homeland Security*; and
TODD BLANCHE, *in his official capacity as Acting Attorney General*,

        Defendants.

Case No. 6:26-cv-00585-MTK

**OPINION AND ORDER**

**KASUBHAI,** United States District Judge:

Plaintiff Mina Karami brings claims against Defendants Joseph Edlow, Markwayne Mullin, and Todd Blanche[1] under the Mandamus and Venue Act of 1962, 28 U.S.C. § 1361; the Administrative Procedure Act ("APA"), 5 U.S.C. § 706; the Immigration and Nationality Act, 8 U.S.C. § 1152(a)(1)(A); and the Fifth Amendment to the U.S. Constitution, asking the Court to compel Defendants to adjudicate her pending immigration-related applications. Before the Court

---

[1] Plaintiff originally asserted her claim against Pamela Bondi as Acting Attorney General of the United States. However, pursuant to Rule 25(d), Todd Blanche is substituted as Ms. Bondi's acting successor. Fed R. Civ. P. 25(d).

Page 1 — OPINION AND ORDER

is Plaintiff's Motion for Preliminary Injunction. ECF No. 6. For the reasons discussed below, Plaintiff's motion is granted.

## BACKGROUND

Plaintiff seeks a preliminary injunction in the form of an order compelling Defendants to complete their adjudication of Plaintiff's Application for Employment Authorization (Form I-765) within 30 days. The Court begins by summarizing the facts relating to adjudication of Form I-765 and Plaintiff's status.

## I.    Adjudication of Form I-765

The United States Department of Homeland Security, U.S. Citizenship and Immigration Services ("USCIS") is responsible for adjudicating Form I-765, Application for Employment Authorization, and similar applications. Lin Decl. ¶ 1, ECF No. 10. Form I-765 is "generally worked on a first-in-first-out process." *Id.* As of April 13, 2026, the "processing time" for Form I-765—when based on a pending Application to Register Permanent Residence or Adjust Status at the California Service Center—is "approximately nine and a half months." Lin Decl. ¶ 4.

On June 4, 2025, President Trump issued Proclamation No. 10949, 90 Fed. Reg. 24497 (June 4, 2025) (" the Proclamation"), "Restricting the Entry of Foreign Nationals to Protect the United States From Foreign Terrorists and Other National Security and Public Safety Threats." The Proclamation fully suspends entry into the United States by nationals from 12 countries, including Iran, subject to certain exceptions and waivers. *Id.* at 24499-501. On December 2, 2025, USCIS issued a Policy Memorandum directing USCIS personnel to "[p]lace a hold on pending benefit requests for aliens from countries" listed in the Proclamation. Compl. Ex. B, ECF No. 1-2. On January 1, 2026, USCIS issued a second Policy Memorandum that expanded the adjudicative hold to individuals from additional countries and announced certain exceptions

to the adjudicative hold. Compl. Ex. C, ECF No. 1-3. Throughout this Opinion and Order, the Court refers to both Policy Memoranda collectively as the "Policy Memos."

## II.     Plaintiff's Status

Plaintiff Mina Karami is a citizen of Iran currently pursuing a graduate degree at Oregon State University on an F-1 student visa. Compl. ¶ 55, ECF No. 1; Karami Decl. ¶ 2, ECF No. 6-1. On October 16, 2025, Plaintiff filed a Form I-765 concurrently with several other applications. Compl. Ex. A, ECF No. 1-1. USCIS issued notices of receipt of the applications on January 6, 2026. *Id.* USCIS scheduled a biometrics appointment, which was completed on January 29, 2026. Lin Decl. ¶ 6. No further action has been taken with respect to Plaintiff's applications. Defendants contend that Plaintiff's processing time is within posted processing times and that "[t]he time that Plaintiff's work authorization application has been pending up until this point is unrelated to [the Policy Memos]." Lin Decl. ¶¶ 7-8.

Plaintiff expects to graduate from her program in Spring 2027. Karami Decl. ¶ 3. Plaintiff asserts that without employment authorization, she has been "unable to meet the basic requirements needed to enter the professional workforce," including applying for professional opportunities critical to gaining professional experience. Karami Decl. ¶¶ 3-4. She asserts that this summer is her "last chance to get an internship, and the loss of this opportunity will likely have lasting negative effects on [her] future employment prospects and income." Karami Decl. ¶ 6. She has also been unable to travel to professional events that are "essential" to her career development. Karami Decl. ¶ 5.

Plaintiff fears that if she graduates without her applications being processed, she will lose the health insurance provided through her school and will be unable to obtain other health insurance necessary to treat her existing health conditions. Karami Decl. ¶ 7. Plaintiff also fears that the lack of action on her pending applications could force her to return to Iran, where she

Page 3 — OPINION AND ORDER

believes she will face a risk of imprisonment due to her participation in protests against the Iranian government while in the United States. Karami Decl. ¶ 8. Additionally, Plaintiff requires medical treatments that she asserts are unavailable in Iran. Karami Decl. ¶ 9.

## STANDARD

A preliminary injunction is an "extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008). A plaintiff seeking a preliminary injunction generally must show that (1) they are likely to succeed on the merits, (2) they are likely to suffer irreparable harm in the absence of preliminary relief, (3) the balance of equities tips in their favor, and (4) that an injunction is in the public interest. *Id.* at 20 (rejecting the Ninth Circuit's earlier rule that the mere "possibility" of irreparable harm, as opposed to its likelihood, was sufficient, in some circumstances, to justify a preliminary injunction).

The Supreme Court's decision in *Winter*, however, did not disturb the Ninth Circuit's alternative "serious questions" test. *All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131-32 (9th Cir. 2011). Under this test, "'serious questions going to the merits' and a hardship balance that tips sharply toward the plaintiff can support issuance of an injunction, assuming the other two elements of the *Winter* test are also met." *Id.* at 1132. Thus, a preliminary injunction may be granted "if there is a likelihood of irreparable injury to plaintiff; there are serious questions going to the merits; the balance of hardships tips sharply in favor of the plaintiff; and the injunction is in the public interest." *M.R. v. Dreyfus*, 697 F.3d 706, 725 (9th Cir. 2012).

When a plaintiff seeks "mandatory" relief rather than "prohibitory" relief, that relief "is particularly disfavored, and should not be issued unless the facts and law clearly favor the moving party." *Anderson v. United States*, 612 F.2d 1112, 1114-15 (9th Cir. 1979) (citation omitted).

**DISCUSSION**

Plaintiff contends that she satisfies the *Winter* test and that the Court should grant preliminary injunctive relief in the form of a court order compelling Defendants to adjudicate her Form I-765 within 30 days.

## I.    Likelihood of Success on the Merits

Plaintiff contends that she has established a likelihood of success on the merits as to each of her claims for relief. Defendants raise two threshold arguments: that Plaintiff lacks standing because she cannot demonstrate injury, and that Plaintiff fails to challenge a final agency action. On the merits, Defendants contend that there has not been any unreasonable delay necessary to support an APA or mandamus claim. The Court begins by addressing Defendants' two threshold arguments before turning to the merits of Plaintiff's claims.

### A.    Standing

First, Defendants contend that Plaintiff lacks standing. The U.S. Constitution confers limited authority on the federal courts to hear only active cases or controversies brought by persons who demonstrate standing. *See Spokeo, Inc. v. Robins*, 578 U.S. 330, 337-38 (2016); *Already, L.L.C. v. Nike, Inc.*, 568 U.S. 85, 90 (2013). Standing "limits the category of litigants empowered to maintain a lawsuit in federal court to seek redress for a legal wrong." *Spokeo, Inc.*, 578 U.S. at 338. To have standing, a plaintiff must have "personal interest . . . at the commencement of the litigation." *Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 189 (2000). The required personal interest must satisfy three elements throughout the litigation: (1) an injury in fact (i.e., an invasion of a legally protected interest that is concrete and particularized as well as actual or imminent); (2) a causal connection between the injury-in-fact and the defendant's challenged behavior; and (3) a likelihood that the injury-in-fact will be redressed by a favorable ruling. *Id.* at 180-81, 189; *see also Spokeo, Inc.*, 578 U.S. at 338

(reiterating that the "irreducible constitutional minimum" of standing consists of "an injury in fact . . . fairly traceable to the challenged conduct of the defendant, and . . . likely to be redressed by a favorable judicial decision") (citations omitted).

Defendants here contend that Plaintiff cannot demonstrate injury because she cannot prove that her application has been delayed as a result of the Policy Memos. Plaintiff's Complaint is supported by an exhibit showing that the processing time for 80 percent of Form I-765 applications, based on a pending I-485 adjustment application at the "National Benefits Center," is four months. Compl. Ex. D, ECF No. 1-4. Defendants contend that the correct processing time is 9.5 months, and that Plaintiff's evidence is inaccurate because "Plaintiff's application is being adjudicated by the Service Center Operations Texas Facility," not the National Benefits Center. Defs.' Resp. 11, ECF No. 8. The processing time for that facility, according to Defendants, is 9.5 months. Shaw Decl. ¶ 2, ECF No. 9.

The processing times provided by the parties are irrelevant, as it is undisputed that the Policy Memos apply to Plaintiff and that they categorically preclude any processing of her Form I-765. Whatever the average processing time should have been for Form I-765 at the time Plaintiff submitted it and at the location it was submitted,[2] such time has no meaning when the effect of the Policy Memos is to pull Plaintiff out of line entirely. As aptly put by another district Court presented with this question, "whether a normative or average processing time is usually

---

[2] The Court notes that the processing times provided by the parties are of little help to this Court in discerning the expected average processing time, even if such time were relevant. Neither party presents evidence of what the processing time was when Plaintiff submitted her applications on October 16, 2025, and the parties' evidence suggests that wait times fluctuate over time. Moreover, it is unclear to the Court whether wait times differ between Service Centers and which Service Center is processing Plaintiff's application, as her submissions and Defendants' brief suggests it is "Service Center Operations Texas Facility," Resp. 11, Compl. Ex. A, while one of Defendants' declarations asserts that Plaintiff's application is being processed at the California Service Center. Lin Decl. ¶¶ 5-7.

180 days, 4 months, or 11 months is of limited relevance given that under PM-0192, final adjudication of Plaintiffs' benefit applications is on indefinite hold." *Varniab v. Edlow*, 2026 WL 485490, at \*13 (N.D. Cal. Feb. 20, 2026). While Defendants emphasize that the Lin Declaration affirmatively states that "[t]he time that Plaintiff's work authorization application has been pending up until this point is unrelated to [the Policy Memos]," Lin Decl. ¶ 8, that assertion appears to be based on the notion that, because 9.5 months have not elapsed, the time Plaintiff's application has been pending cannot be said to be related to the Policy Memos. Notably, neither that Declaration nor any other of Defendants' submissions state that Plaintiff is not subject to the Policy Memos—which apply to Plaintiff on their face—or that Plaintiff is excepted from them. There is therefore no dispute that the Policy Memos apply to Plaintiff or that Defendants are currently enforcing the Policy Memos.[3] As a consequence, Plaintiff's Form I-765 is currently subject to a hold. That injury is not speculative or hypothetical, but concrete and actual. Plaintiff demonstrates injury.

### B.    Final Agency Action

Second, Defendants contend that Plaintiff's motion should be denied because she fails to challenge final agency action. The APA[4] limits judicial review to "final agency action." 5 U.S.C. § 704. An agency action is final when it marks (1) the "consummation of the agency's decision[-]making process," is not merely a "tentative or interlocutory" decision, and is (2) an action "by which rights or obligations have been determined, or from which legal consequences will flow."

---

[3] Although the United States District Court for the District of Rhode Island issued an order vacating the Policy Memos on June 5, 2026, *Dorcas Int'l Inst. v. U.S. Citizenship & Immigr. Servs.*, 2026 WL 1622708, at \*57 (D.R.I. June 5, 2026), Defendants have declined in this case to confirm that they intend to stop enforcing the Policy Memos, taking the position that they remain enforceable. Joint Status Report 2, ECF No. 21.

[4] Defendants fail to explain how this argument would apply to Plaintiff's non-APA claims. Thus, the Court notes that this argument has no bearing on Plaintiff's non-APA claims.

*Bennett v. Spear*, 520 U.S. 154, 177-78 (1997) (internal citations and quotation marks omitted). In applying the *Bennett* test, the Ninth Circuit considers factors including whether the action amounts to the agency's definitive statement of its position, whether the action has a direct and immediate effect on the subject party's daily operations, and whether the agency expects immediate compliance with the terms of the action. *Or. Nat. Desert Ass'n v. U.S. Forest Serv.*, 465 F.3d 977, 982 (9th Cir. 2006) (citations omitted); *Nat'l Lab. Rels. Bd. v. Siren Retail Corp.*, 99 F.4th 1118, 1123 (9th Cir. 2024).

To satisfy the first prong of the *Bennett* test, the agency action must "mark the consummation of the agency's decision[-]making process—it must not be of a merely tentative or interlocutory nature." *Bennett*, 520 U.S. at 177-78 (internal citation and quotation marks omitted). Defendants contend that because the Policy Memos make clear that they will be updated—and, in fact, have been updated—they are not final agency action. This Court agrees with the logically compelling and well-founded reasoning of the numerous other district courts that have rejected this argument because the Policy Memos "unambiguously place[] an indefinite hold on final adjudication of all pending benefit applications for aliens from a list of countries including Iran." *Behdin v. Edlow*, 2026 WL 1031079, at *19 (N.D. Cal. Apr. 16, 2026); *see also Bowser v. Noem*, 2026 WL 555624, at *6 (D. Mass. Feb. 27, 2026) ("As this appears to be an indefinite moratorium on applications for immigration benefits from these 39 countries . . . the first prong of *Bennett* is satisfied."); *Saghafi v. Edlow*, 2026 WL 1127468, at *6 (D. Md. Apr. 24, 2026) (The Policy Memos meet the first prong of *Bennett* "despite the ninety-day guidance plan and Edlow's ability to modify the Memoranda."); *Batista Mulet v. U.S. Citizenship & Immigr. Servs.*, 2026 WL 1429279, at *7 (S.D. Fla. May 21, 2026) (finding that despite being "framed as a temporary hold," the Policy Memos are "akin to placing an indefinite blanket moratorium on

Page 8 — OPINION AND ORDER

adjudication of applications filed by applicants from particular countries" and are final agency action); *Dorcas Int'l Inst.*, 2026 WL 1622708, at *25 (finding that the first prong of the *Bennett* test was satisfied, despite the Policy Memo's characterization as temporary, because they "have remained in effect for over six months and counting[]" and "[t]he agency has given no timeline as to when its 'temporary' hold on immigration benefit requests will end").

To satisfy the second prong of the *Bennett* test, the action "must be one by which 'rights or obligations have been determined,' or from which 'legal consequences will flow.'" *Bennett*, 520 U.S. at 178 (citation omitted). The Ninth Circuit focuses on the "practical and legal effects" of the action and interprets finality in a "pragmatic and flexible manner." *Or. Nar. Desert Ass'n*, 465 F.3d. at 982 (citation omitted). Defendants contend that because Plaintiff's application is "still in the review process," no legal consequences have occurred. Defs.' Resp. 15. But by their plain terms, the Policy Memos preclude any final decision on Plaintiff's Form I-765 while it is subject to an indefinite hold, preventing Plaintiff from seeking employment. "Courts have regularly determined that [the second *Bennett* prong] is satisfied when an indefinite pause is imposed by an agency." *New York v. Trump*, 811 F. Supp. 3d 215, 234 (D. Mass. 2025). This Court again agrees with the sound reasoning of numerous other district courts that have concluded that the Policy Memos satisfy the second *Bennett* prong. *See, e.g.*, *Behdin*, 2026 WL 1031079, at *19-20 (finding that the Policy Memos satisfy the second *Bennett* prong because preventing final adjudication of Form I-765 applications affected the plaintiffs' rights); *Bowser*, 2026 WL 555624, at *6 (rejecting the argument that the fact that the administrative process was "ongoing" meant no legal consequences have occurred because it "ignores the very serious consequences that will result for [the plaintiff] and others like her as this indefinite hold remains in place," including the inability to seek employment); *Dorcas Int'l Inst.*, 2026 WL 1622708, at

Page 9 — OPINION AND ORDER

\*26 (finding the second *Bennett* prong met in light of the "significant legal and practical consequences" of the indefinite suspension of work permits).

Plaintiff challenges final agency action—the Policy Memos—and her APA claims are therefore reviewable.

### C.    Merits

Plaintiff provides detailed argument as to why she is likely to succeed on the merits of seven of her eight claims for relief.[5] For purposes of a preliminary injunction, Plaintiff "only needs to show the requisite combination of probable success on the merits and the possibility of irreparable injury with respect to any one of [her] claims." *Fin. Express L.L.C. v. Nowcom Corp.*, 564 F. Supp. 2d 1160, 1168 (C.D. Cal. 2008). Here, as Plaintiff notes, beyond addressing the threshold issues, Defendants only respond to Plaintiff's arguments on Plaintiff's Counts One and Two. The Court construes Defendants' failure to address Plaintiff's detailed arguments on Counts Three, Four, Five, Six, and Eight as a concession that she is likely to succeed on the merits of those claims. *See, e.g.*, *Khoury v. Noem*, 2026 WL 846040, at \*3 (C.D. Cal. Jan. 22, 2026) (construing the respondent's failure to address a petitioner's likelihood of success on one of her claims as a "concession that Petitioner is likely to succeed on the merits of this claim"); *Garcia v. Reynaud*, 2023 WL 3073501, at \*1 (D. Or. Apr. 25, 2023) (finding that a failure to address a particular argument "constitutes a concession on the merits"). For the reasons set forth in Plaintiff's briefing, and in light of Defendants' lack of response on these claims, the Court

---

[5] Plaintiff's Motion does not address the likelihood of success on the merits on Count Seven: "8 U.S.C. § 1152(a)(1)(A); 42 U.S.C. § 1985(3); and the Fifth Amendment — Unlawful Discriminatory Scheme and Conspiracy to Interfere with Civil Rights." Compl. ¶¶ 132-40.

finds that Plaintiff has established a likelihood of success on Counts Three, Four, Five, Six, and Eight for purposes of this motion.[6]

Plaintiff's Count One seeks a Writ of Mandamus, pursuant to 28 U.S.C. § 1361, based on Defendants' failure to exercise their non-discretionary duty to adjudicate her applications. Compl. ¶¶ 82–95. Count Two asks the Court to compel agency action "unlawfully withheld or unreasonably delayed" under the APA, 5 U.S.C. § 706(1). *Id.* at ¶¶ 96–107. Because the relief sought in both of these claims is "essentially the same," the Ninth Circuit has endorsed analyzing the APA claim when it is asserted together with a claim under 28 U.S.C. § 1361. *Indep. Mining Co. v. Babbitt*, 105 F.3d 502, 507 (9th Cir. 1997). Plaintiff alleges both unlawful withholding and unreasonable delay under the APA. The Ninth Circuit has explained that

> [t]he distinction between agency withholding and delay is important. If an agency withholds a required action, it violates § 706(1) regardless of its reason for doing so. But if an agency delays a required action, it violates § 706(1) only if the delay is "unreasonabl[e]." *Id.* The reasonableness of any delay is a fact-intensive inquiry analyzed under "the so-called *TRAC* factors." *Indep. Mining Co. v. Babbitt*, 105 F.3d 502, 507 (9th Cir. 1997) (citing *Telecomms. Rsch. & Action Ctr. v. FCC*, 750 F.2d 70, 79-80 (D.C. Cir. 1984)).

*Al Otro Lado v. Exec. Off. for Immigr. Rev.*, 138 F.4th 1102, 1120-21 (9th Cir. 2025), *cert. granted sub nom.*, *Noem v. Al Otro Lado*, 146 S. Ct. 604 (U.S. Nov. 17, 2025) (No.25-5).[7] There

---

[6] With respect to Plaintiff's Count Three ("The Policy Memorandums' 'Hold' is Arbitrary, Capricious, an Abuse of Discretion, or Otherwise Not in Accordance with Law, 5 U.S.C. 706(2)(A)") and Count Five ("Immigration and Nationality Act, 8 U.S.C. § 1152(a)(1)(A)"), the Court also notes that the District of Rhode Island has recently found the Policy Memos to be arbitrary and capricious for failure to consider applicants' reliance interests, *Dorcas Int'l Inst.*, 2026 WL 1622708, at *49-50, and contrary to 8 U.S.C. § 1152(a)(1)(A). *Id.* at *45-47. This Court agrees with the District of Rhode Island's sound reasoning and finds that Plaintiff is likely to succeed on the merits of her similar claims for the same reasons set forth in that decision.

[7] The question presented in the Petition for Writ of Certiorari does not appear to be related to the distinction between "unlawful withholding" and "unreasonable delay," but instead "whether an alien who is stopped on the Mexican side of the U.S.-Mexico border 'arrives in the United

is no serious question here—and Defendants do not appear to contest—that the duty to adjudicate Form I-765 applications is not discretionary. Instead, the question is whether that action has been unlawfully withheld or unreasonably delayed.

Turning first to Plaintiff's unlawful withholding theory, an action is "withheld" when "an agency refuses to accept, in any form, a request that it take a required action." *Al Otro Lado*, 138 F.4th at 1122. When an action is "withheld," "no amount of waiting can be expected to change the situation." *Id.* By contrast, when an action is "delayed," "one expects that, with the passage of time (maybe even an unreasonable amount of time), the action eventually will be completed." *Id.*

Here, the Court finds that Plaintiff is likely to succeed on her claim that the Policy Memos represent a withholding of Defendants' nondiscretionary duty to adjudicate Plaintiff's Form I-765. As an initial matter, Defendants present no argument in opposition to Plaintiff's unlawful withholding theory, despite that theory having been clearly and distinctly raised both in Plaintiff's Complaint and her Motion for Preliminary Injunction. Defendants have effectively conceded that point. Regardless of Defendants' effective concession, the plain language of the Policy Memos makes clear that they are withholding action rather than delaying it. Indeed, the Policy Memos explicitly use the word "hold" in reference to adjudication of such applications. Compl., Ex. B at 1 ("Place a hold on pending benefit requests for aliens from countries listed in [the Proclamation] . . . ."). As already explained in the portion of this opinion relating to final agency action, the effect of the Policy Memos is to place an indefinite hold on adjudication of benefit requests. That is not a delay; it is a categorical refusal to adjudicate amounting to

States' within the meaning of th[e] provisions [of the Immigration and Nationality Act]." Petition for Writ of Certiorari at I, *Noem v. Al Otro Lado*, 146 S. Ct. 604 (2025) (No. 25-5).

unlawful withholding. *See, e.g.*, *Lorente v. U.S. Citizenship & Immigr. Servs.*, 2026 WL 1396116, at \*13 (S.D. Fla. May 19, 2026) (finding a likelihood of success on the merits of an unlawful withholding claim based on the Policy Memos because "the policy memoranda do not merely delay adjudication of . . . applications—they *foreclose* such adjudication indefinitely").

Even if the Policy Memos were characterized as delaying adjudication rather than withholding it, the Court finds that Plaintiff has successfully established a likelihood of success in proving her alternative theory that such delay is unreasonable. As Plaintiff notes, several other district courts have already engaged in this analysis with respect to substantially similar claims. Pl.'s Reply 3-4 (citing *Behdin*, 2026 WL 1031079, at \*67-69; *Varniab*, 2026 WL 485490, at \*9-13). Other than the time Plaintiff's application has been pending, the Court discerns no meaningful difference between the facts in this case and those in *Behdin* and *Varniab*. This Court has already explained that the time Plaintiff's application has been pending is of limited relevance given the effect of the Policy Memos and sees no reason to depart from sound analysis of the District of Northern California in *Behdin* and *Varniab*. This Court therefore adopts the reasoning of those cases and finds that Plaintiff has established a likelihood of success on the merits of her "unreasonable delay" theory on Count 2.

Plaintiff has established a likelihood of success on Counts One, Two, Three, Four, Five, Six, and Eight, and therefore meets this element of the *Winter* test several times over.

## II.    Irreparable Harm

To meet the second *Winter* factor, Plaintiff must demonstrate that "[s]he is likely to suffer irreparable harm in the absence of preliminary relief." 555 U.S. at 20. Irreparable harm is "harm for which there is no adequate legal remedy, such as an award of damages." *Ariz. Dream Act Coal. v. Brewer*, 757 F.3d 1053, 1068 (9th Cir. 2014). "Speculative injury cannot be the basis for

a finding of irreparable harm." *In re Excel Innovations, Inc.*, 502 F.3d 1086, 1098 (9th Cir. 2007).

Plaintiff contends that she meets the irreparable harm requirement for a preliminary injunction because withholding adjudication of her Form I-765 prevents her from pursuing employment opportunities and advancing her career, which she contends is essential to ensure she can stay in the United States, retain access to health care for her medical conditions, and avoid potential imprisonment in Iran for her participation in political protests. Defendants respond that Plaintiff's evidence is insufficiently speculative because she has not shown that "a job would be guaranteed" if her Form I-765 were granted. Defs.' Resp. 17.

Plaintiff has made a sufficient showing of irreparable harm here. Other than citing the general proposition that harm must not be speculative, Defendants offer no legal authority for their argument that Plaintiff must affirmatively show that she would be guaranteed a job if her Form I-765 were granted. Nor would such a requirement make any sense, because the absence of employment authorization places a real barrier on Plaintiff's ability to seek employment at all, as pursuing employment without the ability to accept any offers is a fool's errand. Moreover, multiple other courts have concluded that a loss or delay in employment authorization constitutes irreparable harm. *See Doe v. Noem*, 778 F. Supp. 3d 1151, 1164 (W.D. Wash. 2025) (collecting cases). Plaintiff's showing is particularly compelling here given her status as a graduate student and the importance of obtaining an internship to gain professional experience at a critical juncture in her developing career.

### III.  Balance of Equities and Public Interest

Finally, where the government opposes a preliminary injunction, the last two factors in the preliminary injunction analysis merge, because any harm to the public interest impacts the balance of the equities. *Nken v. Holder*, 556 U.S. 418, 435 (2009). Plaintiff contends that the

Page 14 — OPINION AND ORDER

final two factors weigh in favor of a preliminary injunction because the burden of adjudicating a single application without regard to the Policy Memos is minimal compared to Plaintiff's complete inability to obtain employment, earn income, and advance her career. In light of the Court's finding that Plaintiff is likely to succeed on the merits on her claims that Defendants' failure to adjudicate her Form I-765 based on the Policy Memos is unlawful, the Court finds that the final two *Winter* factors weigh strongly in favor of the injunctive relief Plaintiff seeks. *See Valle del Sol Inc. v. Whiting*, 732 F.3d 1006, 1029 (9th Cir. 2013) (concluding that when the government's alleged action violates federal law, the combined balance of equities and public interest generally weighs in favor of the plaintiff).

Plaintiff has met the requirements for a preliminary injunction under *Winter*. Defendants' opposition to Plaintiff's motion contested Plaintiff's entitlement to injunctive relief but did not present any argument that its requested form—an order that Defendants must adjudicate her Form I-765 within 30 days—is inappropriate or overly broad. The Court finds that such an order is appropriately tailored.

## CONCLUSION

For the reasons discussed above, Plaintiff's Motion for Preliminary Injunction (ECF No. 6) is GRANTED. Within 30 days of today's date, Defendants are ordered to adjudicate Plaintiff's Form I-765 and (1) if the application is approved, shall produce and deliver her Employment Authorization Documents or (2) if the application is denied, shall provide the reasons for denial.

DATED this 15th day of June 2026.

MUSTAFA T. KASUBHAI (he/him)
United States District Judge